**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.:

RAMSES IBRAHIM,

    Plaintiff,

v.

CAPGEMINI AMERICA, INC.,

    Defendant.
_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RAMSES IBRAHIM, by and through his undersigned counsel, hereby files this Complaint and Demand for Jury Trial against Defendant, CAPGEMINI AMERICA, INC., and states the following in support of his claim:

## NATURE OF ACTION

1. This action seeks damages based on Defendant's violations of the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 et seq. ("FMLA").

## THE PARTIES

2. At all relevant times, Defendant was Plaintiff's employer and employed no less than 50 or more employees for each of 20 or more weeks in the current or preceding year.

3. Defendant is accordingly an employer as defined by the FMLA.

4. Plaintiff was an eligible employee under the FMLA, as he had worked for Defendant for at least 12 months; had been employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave; and he reported to a worksite where 50 or more employees are employed by the employer within 75 miles of that

worksite.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question jurisdiction).

6. The violations complained of herein occurred in this judicial district and as such venue is proper in this Court.

## FACTUAL ALLEGATIONS

7. Defendant is an information technology (IT) services and consulting company.

8. Defendant's subsidiary, Sogeti USA, is Defendant's technology and engineering services division.

9. Plaintiff began employment with Defendant, in particular its Sogeti USA subsidiary, on or about August 27, 2018.

10. Plaintiff's title was Senior Quality Assurance Manager.

11. Plaintiff worked remotely from his home in Florida but reported to and received assignments from Sogeti USA's offices in Dayton, Ohio.

12. Plaintiff was on Defendant's Humana team until May 2022.

13. Plaintiff's work was exemplary, and he was praised by his managers and by Humana for his work.

14. Plaintiff received a pay increase to $125,000 annually in March 2022.

15. In May 2022, Plaintiff was transferred to the Safelite Project for Defendant's client Belron.

16. The Safelite Project was about six months behind schedule.

17. The demands of the job required that Plaintiff work long hours, often seven days

per week, and travel twice per month to Columbus, Ohio.

18. The pressures of the job eventually caused Plaintiff extreme anxiety, nervousness, heart palpitations, chest pains, and inattentiveness.

19. On July 25, 2022, Plaintiff's physician recommended that he take two weeks off from work.

20. On August 3, 2022, Plaintiff's physician recommended that he remain out of work until October 11, 2022.

21. Plaintiff promptly asked Defendant's Human Resources department for a period of FMLA leave.

22. In response to Plaintiff's request, Katherine McCrea, Human Resources Benefits Administrator, sent Plaintiff Form WH-381, "Notice of Eligibility & Rights and Responsibilities under the Family and Medical Leave Act."

23. The form stated that Defendant did *not* consider Plaintiff a "key employee" and that Defendant has *not* "determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us."

24. The fact that Plaintiff was not designated as a key employee meant that upon return from FMLA leave Plaintiff was "entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 C.F.R. § 825.214. "An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence." *Id*.

25. On August 5, 2022, Ms. McCrea informed Plaintiff by email and by form WH-382 that he was approved for FMLA leave from August 3, 2022 to October 10, 2022.

26. Defendant was aware that the Safelite project was extremely stressful to its employees.

27. On August 17, 2022, Jon Davies, Director & Global Account Executive, emailed the Safelite team about a meeting to "discuss the support which Capgemini offers to your employees to support your mental & physical wellbeing."

28. Mr. Davies acknowledged "the pressures that working on an account such as Belron can bring[.]"

29. Plaintiff forwarded this email to Human Resources Director Michael Seggerson and copied Executive Vice President John Schwab.

30. Mr. Seggerson responded, "Thanks for forwarding. John and I know the effort you put forth at Belron/Safelite and its unfortunate the way things transpired. Hope you can use this time to destress and get healthy. We'll continue to say in touch this Fall."

31. Plaintiff recuperated during his FMLA leave his health improved.

32. Plaintiff returned to work without restrictions on October 11, 2022, and his salary was restored.

33. However, Plaintiff's position on the Safelite team had been filled.

34. Defendant did not offer Plaintiff an equivalent position.

35. Plaintiff attempted to secure another position with Defendant for the next several weeks but was unsuccessful.

36. On November 3, 2022, in a Microsoft Teams chat, Plaintiff reminded Seggerson of the Company's obligations under the FMLA.

37. Mr. Seggerson responded: "Hi Ram – Nothing new to report. FMLA guarantees your return to work or 'active status' which can mean the bench, but not a project. We are still

working it as best as possible."

38. The FMLA does not permit an employer to "bench" an employee upon return from FMLA leave rather than restoring the employee to the same position or an equivalent position.

39. Defendant terminated Plaintiff's employment effective November 15, 2022, claiming that it was unable to find another position for Plaintiff.

40. In point of fact, there were numerous positions at the Company that Plaintiff was qualified to fill.

## COUNT I
## INTERFERENCE WITH FMLA RIGHTS

41. Plaintiff reasserts his allegations in paragraphs 1 – 40 as if fully set forth herein.

42. By failing to restore Plaintiff to the same position or an equivalent position upon his return from FMLA leave on October 11, 2022, Defendant interfered with Plaintiff's FMLA rights.

43. Defendant further interfered with Plaintiff's FMLA rights by terminating his employment on November 15, 2022.

44. As a result of Defendant's interference, Plaintiff has experienced and will continue to experience significant financial and economic loss in the form of lost wages and lost benefits.

45. Plaintiff accordingly demands lost economic damages in the form of lost wages, back pay, interest, front pay, and the value and/or economic impact of lost benefits.

46. Plaintiff also demands liquidated damages based on Defendant's intentional, willful, wanton and malicious conduct.

47. Plaintiff further demands an award of his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff prays for the entry of a judgment against Defendant and an award of economic damages in the form of lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, liquidated damages, attorney's fees and costs, and such equitable relief as may be appropriate, as a result of Defendant's conduct in violation of the FMLA.

## COUNT II
## RETALIATION FOR THE EXERCISE OF FMLA RIGHTS

48. Plaintiff reasserts his allegations in paragraphs 1 - 40 as if fully set forth herein.

49. Defendant retaliated against Plaintiff for exercising his FMLA rights by failing to restore Plaintiff to the same position or equivalent position upon his return from FMLA leave on October 11, 2022

50. Defendant further retaliated against Plaintiff for exercising his FMLA rights by terminating his employment on November 15, 2022.

51. Defendant's alleged reason for Plaintiff's termination – that it was unable to find another position for Plaintiff – was pretextual and asserted only to cover up the retaliatory nature of its conduct.

52. As a result of the retaliatory conduct to which Plaintiff was subjected, including Plaintiff's termination from employment, Plaintiff has experienced and will continue to experience significant financial and economic loss in the form of lost wages and lost benefits.

53. Plaintiff accordingly demands lost economic damages in the form of lost wages, back pay, interest, front pay, and the value and/or economic impact of lost benefits.

54. Plaintiff also demands liquidated damages based on Defendant's intentional, willful, wanton and malicious conduct.

55. Plaintiff further demands an award of his attorney's fees and costs as permitted by

law.

WHEREFORE, Plaintiff prays for the entry of a judgment against Defendant and an award of economic damages in the form of lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, as well as liquidated damages, attorney's fees and costs, and such equitable relief as may be appropriate, as a result of Defendant's conduct in violation of the FMLA.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on each of his above claims.

Respectfully submitted,

**/s/ Richard D. Tuschman**
Richard D. Tuschman, Esq.
Florida Bar No. 907480
E-mail: rtuschman@gtemploymentlawyers.com
2nd E-mail: assistant@gtemploymentlawyers.com
**RICHARD D. TUSCHMAN, P.A.**
12555 Orange Drive, 2nd Floor
Davie, Florida 33330
Telephone: (954) 369-1050
Facsimile: (954) 380-8938

*Attorneys for Plaintiff*